NO.
12-06-00311-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

KEVIN
WADE CONNER,   §                      APPEAL FROM THE 

APPELLANT

 

V.        §                      COUNTY
COURT AT LAW OF

 

THE STATE OF TEXAS,

APPELLEE   §                      CHEROKEE COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM
OPINION

            Kevin
Wade Conner appeals his conviction for telephone harassment.  Appellant raises nine issues on appeal.  We affirm.

 

Background

            Appellant
was arrested for public intoxication and taken to the Cherokee County
Jail.  At the time of his arrest,
Appellant had observed circumstances that caused him to believe that his wife,
Penny Conner, was engaged in an extramarital sexual affair with one of his
lifelong friends.[1]  While at the
booking area of the jail, Appellant placed a telephone call to Conner.  Pursuant to the jail’s standard policy, the
call was recorded without notice to either Appellant or Conner.  During the call, Appellant threatened Conner,
indicating that, once out of jail, he planned to hunt down Conner and
physically assault her.  








            The
Cherokee County Attorney filed an information charging Appellant with telephone
harassment.  At trial, over Appellant’s
objection, the audio recording of the telephone call between Appellant and
Conner was played for the jury. 
Appellant requested that the jury charge include an instruction
regarding the exclusionary rule pertaining to evidence secured in violation of
the law.  The trial court denied
Appellant’s request.  The jury returned a
verdict of guilty and assessed Appellant’s punishment at 180 days of
confinement and a fine of $1,000, with a recommendation that the sentence be
probated.  The trial court probated
Appellant’s sentence and ordered that Appellant serve two years of community
supervision and pay a $500 fine.  This
appeal followed.

 

Hearsay

            In
his first issue, Appellant argues that the trial court erred in allowing
hearsay evidence during the testimony of Deputy Joshua Jenkins of the Cherokee
County Sheriff’s Department.

            Our
review of the record reveals three hearsay objections made by Appellant during
Deputy Jenkins’s testimony.  One of the
hearsay objections was sustained, while the other two objections were
overruled.  The two instances of
overruled objections are as follows:

 

Q             All
right, sir.  Did you have an occasion to
go to the sheriff’s department of Cherokee County, to the dispatch office?

 

A             Yes,
sir, I did.

 

Q             . .
. [W]hat did you understand that call to require of you?

 

A             I
was informed by- -

 

[DEFENSE COUNSEL:]     Respectfully,
Your Honor, I believe that’s hearsay.

 

THE COURT:                      What
was the question?

 

[PROSECUTOR:]                What
was the nature of the call to report to the Cherokee County Sheriff’s
Department dispatch.

 

THE COURT:                      Overruled.

 

[A]          The
call I received was from the dispatcher there at the sheriff’s office, who
stated that a jailer had overheard threatening statements being made from an
inmate that was speaking to someone on the phone.

 

. . . .

 

Q             Okay.  What did you do, once you got there, sir?

 








A             I
walked inside the dispatch area there. 
The female jailer-- I mean the female communications officer, identified
as Mary Pyle, told me that-- 

 

[DEFENSE COUNSEL:]     Objection,
Your Honor.  That’s hearsay, what another
person told him.

 

THE COURT:                      Overruled.

 

[A]          She
told me that a jailer had informed her that he had overheard some threatening
statements being made over the telephone. 
I believe that the jailer had her call me up to the sheriff’s office to
listen to that recording.

 

 

            The
erroneous admission of hearsay evidence is nonconstitutional error.  See Johnson v. State, 967 S.W.2d
410, 417 (Tex. Crim. App. 1998). 
Nonconstitutional error that does not affect the substantial rights of
the defendant must be disregarded.  Tex. R. App. P. 44.2(b).  Therefore, even if the trial court erred in
overruling Appellant’s hearsay objections, the error would not warrant reversal
unless it had a substantial and injurious effect or influence in determining
the jury’s verdict. See King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997).

            The
two statements Appellant contends are hearsay each contain the same fact, that
an inmate at the jail had made “threatening statements” to someone over the
telephone.  Deputy Jenkins went on to
testify, without objection, that the parties to the call in question were
Appellant and Penny Conner.  Jenkins also
testified, without objection, about the content of the call.  He stated that, during the call, Appellant
told Penny Conner

 

[y]ou
know your shit is weak. . . . I’m coming after your ass.  They can only keep me here so long.
. . . When I get out, we’re going to talk, maybe talk with my goddam
fists.

 

 

In the context of Deputy Jenkins’s
testimony regarding these specific statements made by Appellant, we cannot
conclude that Jenkins’s earlier nonspecific testimony had a substantial and
injurious effect or influence in determining the jury’s verdict.  Therefore, we overrule Appellant’s first
issue.  See id.

 

Recording of Phone Conversation

            In
his second, third, and fourth issues, Appellant complains that the recording of
his telephone conversation with Penny Conner was wrongly admitted into evidence
because the recording was obtained in violation of the law.  Specifically, Appellant argues that his
telephone conversation was recorded in violation of Texas Penal Code section
16.02 and, therefore, the admission of the recording into evidence was
prohibited by Texas Code of Criminal Procedure article 18.20.  See Tex.
Penal Code Ann. § 16.02 (Vernon Supp. 2007); Tex. Code Crim. Proc. Ann. art. 18.20 (Vernon Supp. 2007).

            With
certain exceptions, section 16.02 makes it a criminal offense when a person “intentionally
intercepts. . . a wire, oral, or electronic communication.”  Tex.
Penal Code Ann. § 16.02(b)(1). 
Article 18.20 mandates that recordings of communications intercepted in
violation of section 16.02 should not be received into evidence.  Tex.
Code Crim. Proc. Ann. art. 18.20, § 2. Article 38.23 of the Texas
Code of Criminal Procedure likewise mandates that evidence obtained in
violation of state law may not be admitted against the accused in a criminal
case.  Tex. Code Crim. Proc. Ann. art. 38.23
(Vernon 2008).

            In
the face of a timely and proper objection, the trial court admitted the
recording, stating “[t]he Court holds it is not in violation [of section
16.02,] and the exhibit is accepted.  It
is received.”  Appellant argues that the
jail’s recording of the conversation in question was a direct violation of
section 16.02 and that the State failed to present sufficient evidence to meet
any of section 16.02’s exceptions. 
Because it is unnecessary to do so, we decline to determine whether the
trial court erred.  Instead, we will
assume, without deciding, that the admission of the recording was error and
focus on the question of harm.

            The
erroneous admission of the recording in question is nonconstitutional
error.  See King, 953
S.W.2d at 271.  Nonconstitutional error
that does not affect the substantial rights of the defendant must be
disregarded.  Tex. R. App. P. 44.2(b). 
Such an error does not warrant reversal unless it had a substantial and
injurious effect or influence in determining the jury’s verdict.  See King, 953 S.W.2d at
271.

            We
first note that Deputy Jenkins was allowed, without objection by Appellant, to
testify as to virtually all harmful statements made by Appellant during the
telephone conversation in question.  This
testimony was not controverted by any witness or piece of evidence.  Further, Appellant made no attempt to impeach
the credibility of Deputy Jenkins.  

            In
addition, Penny Conner testified, without objection, as to the substance of the
telephone conversation.  She testified
that Appellant threatened her with serious bodily injury.  She also stated that Appellant told her “my
ass needed to be out of town prior to him being released from jail . . . and he
told me that we would talk but it would be with his fist.”  Her testimony regarding these facts was not
controverted.

            Reviewing
the recording itself, we note that its admission provided some benefit to
Appellant.  The recording contained
accusations by Appellant that Conner had lied to him about her whereabouts and
had traveled to visit her alleged lover, a friend of Appellant.  The recording also contained an allegation by
Appellant that he had personally observed Conner visiting the friend.  Finally, Conner agreed on the recording that
she should not have traveled to visit the friend.  After this concession, the recording shows
that Appellant admitted he might lose his temper and assault her, but also
stated that “I’m going to try to talk to you.” 
Therefore, while the recording confirmed Appellant’s threatening
statements to Conner, it also served to support Appellant’s theory of the
case.  Specifically, it supported
Appellant’s theory that he lacked the requisite intent to harass and was,
instead, responding in a foreseeable manner in the context of a husband
catching his wife having an affair with one of his friends. 

            Appellant
failed to introduce evidence to controvert the testimony that he made the
harassing statements.  In fact, Appellant
called only one witness during the guilt/innocence stage of trial, jailer
Jeremy Woodruff.  Woodruff’s testimony
did not controvert that of Deputy Jenkins or Penny Conner.  The trial court’s nonconstitutional error, if
any, would not warrant reversal unless it had a substantial and injurious
effect or influence in determining the jury’s verdict.  See id.  In light of the uncontested facts of this
case, we cannot hold that such an effect or influence resulted from the alleged
error.[2]  Therefore, we overrule Appellant’s second,
third, and fourth issues.

 

Opinion Testimony








            In
his fifth issue, Appellant argues that the trial court erred in allowing
opinion testimony regarding the state of mind of another person during the
testimony of Deputy Jenkins.  The
entirety of Appellant’s argument on this issue is as follows:

 

The
trial court erred in admitting over objection a lay opinion regarding the state
of mind of another person (Germane to Appellant's objection pursuant to Rule
701 and testimony of Deputy Joshua Jenkins).

 

 

Standard of Review and
Applicable Law

            A
trial court’s ruling on the admissibility of evidence is reviewed under an
abuse of discretion standard.  Green v. State, 934 S.W.2d 92, 101-02
(Tex. Crim. App. 1996).  Absent an abuse
of discretion, we do not reverse a trial court’s decision to admit evidence.  Osbourn v. State, 92 S.W.3d
531, 537 (Tex. Crim. App. 2002).  A trial
court does not abuse its discretion when its decision is within the zone of
reasonable disagreement.  See Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  Further, the trial court’s decision will be
upheld on appeal if it is correct on any theory of law applicable to the case.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990).  This principle
holds true even where the trial court has given an erroneous legal reason for
its decision.  Id.








            Both
lay and expert witnesses can offer opinion testimony.  Texas Rule of Evidence 701 covers the more
traditional witness, one who “witnessed” or participated in the events about
which he or she is testifying, while Texas Rule of Evidence 702 allows for a
witness who was brought in as an expert to testify.  Osbourn, 92 S.W.3d at 535.  A witness can testify in the form of an
opinion under rule 701 if the opinions or inferences are (a) rationally based
on his or her perceptions and (b) helpful to a clear understanding of the testimony
or the determination of a fact in issue. 
Fairow v. State, 943 S.W.2d 895, 898 (Tex. Crim. App.
1997).  Perceptions refer to a witness’s
interpretation of information acquired through his or her own senses or
experiences at the time of the event (i.e., things the witness saw, heard,
smelled, touched, felt, or tasted).  Osbourn,
92 S.W.3d at 535.  Since rule 701
requires the testimony to be based on the witness’s perception, it is necessary
that the witness personally observed or experienced the events about which he or
she is testifying.  Id.
(citing Fairow, 943 S.W.2d at 898).  Thus, the witness’s testimony can include
opinions, beliefs, or inferences as long as they are drawn from his or her own
experiences or observations.  Osbourn, 92 S.W.3d at 535.  This also incorporates the personal knowledge
requirement of Texas Rule of Evidence 602, which states that a witness may not
testify to a matter unless he or she has personal knowledge of the matter.  Id. (citing Bigby v.
State, 892 S.W.2d 864, 889 (Tex. Crim. App. 1994)). 

            The
erroneous admission of the testimony in question would be nonconstitutional
error.  See King, 953
S.W.2d at 271.  Nonconstitutional error
that does not affect the substantial rights of the defendant must be
disregarded.  Tex. R. App. P. 44.2(b).  Therefore, such an error, if any, would not
warrant reversal unless it had a substantial and injurious effect or influence
in determining the jury’s verdict.  See
King, 953 S.W.2d at 271.

Discussion

            Although
Appellant’s brief does not specifically cite the portions of Deputy Jenkins’s
testimony about which he is complaining, our review of the record reveals
twelve instances of testimony that may be the subject of his complaint.  In each instance, Deputy Jenkins had formed
his opinion after reviewing the recording of Appellant’s telephone
conversation. We have assumed, without deciding, that Deputy Jenkins was not
qualified to give a lay opinion regarding state of mind.

            Instances
one through six.  During the
testimony of Deputy Jenkins, Appellant objected to testimony that the wording
and tone of voice used by Appellant in his telephone conversation with Penny
Conner was harassing, annoying, alarming, abusive, tormenting, and
embarrassing.  In all but one of these
instances - the State’s question regarding whether the conversation was “annoying”
- Appellant failed to state an objection until after the question posed to
Deputy Jenkins had already been answered. 


            Generally,
in order for an appellant to argue on appeal that a trial court erred by
allowing a party to pose a specific question to a testifying witness or party,
he must have preserved the error at trial by making a proper objection and
securing a ruling on the objection.  See
Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); see
also Tex. R. App. P. 33.1
(describing the necessary steps to preserve error in Texas courts).  An objection should be made as soon as the
ground for objection becomes apparent.  Lagrone v. State, 942 S.W.2d 602, 618
(Tex. Crim. App. 1997); Dinkins v. State, 894 S.W.2d 330, 355
(Tex. Crim. App. 1995).  If
a party fails to object until after an objectionable question has been asked
and answered, and he can show no legitimate reason to justify the delay, his
objection is untimely and error is waived. 
Id. 








            To
the extent the testimony in question was objectionable, such an objectionable
nature was evident in the questions propounded upon the witness by the
State.  Appellant has made no attempt on
appeal to justify his delay in objecting to the questions.  Further, no legitimate reason is apparent
from the record.  Therefore, with the
exception of Appellant’s objection to the “annoying” question, Appellant’s
objections were untimely and error, if any, is waived.  See id.

            Regarding Deputy Jenkins’s testimony that
Appellant’s conversation with Conner was annoying, this testimony related
solely to the state of mind of Penny Conner. 
That Conner was annoyed by Appellant’s conversation was of slight
evidentiary value.  In fact, it was not
necessary for the State to prove that Penny Conner was annoyed.  In contrast, Deputy Jenkins testified, without
objection, that Appellant told Conner

 

[y]ou
know your shit is weak. . . . I’m coming after your ass.  They can only keep me here so
long. . . . When I get out, we’re going to talk, maybe talk with
my goddam fists.

 

 

These words, absent some very
unusual circumstances, speak for themselves. 
In light of the whole of Deputy Jenkins’s testimony, we cannot hold that
the testimony that Penny Conner was annoyed had a substantial and injurious
effect or influence in determining the jury’s verdict.

            Instances
seven through twelve.  As with
instances one through six, all but one of instances seven through twelve
involve an objection made after the State’s question had already been
answered.  Again, the objectionable
nature, if any, was apparent from the questions propounded.  Also again, Appellant has made no attempt on
appeal to justify his delay in objecting to the questions and no legitimate
reason is apparent from the record.  As
such, error, if any, is waived.  See id.

            In regard to the one instance in which Appellant
made a timely objection, it appears from the record that this question was
never answered by the witness.  Instead,
after the trial court overruled Appellant’s objection, counsel for the State
asked a different question.[3] 
Because the witness did not actually answer the State’s question, no
harmful testimony was admitted.  The
error counsel complains of did not occur.








Conclusion

            Appellant
has failed to preserve for review all but two alleged errors.  Of the two preserved, the first does not
require reversal and the second did not actually occur.  We overrule Appellant’s fifth issue.

 

Jury Charge

            In
his sixth issue, Appellant complains that the trial court erroneously rejected
his request to submit to the jury an article 38.23(a) instruction regarding the
recording of his telephone conversation. 
Article 38.23(a) of the Texas Code of Criminal Procedure reads as
follows:

 

No
evidence obtained by an officer or other person in violation of any provisions
of the Constitution or laws of the State of Texas, or of the Constitution or
laws of the United States of America, shall be admitted in evidence against the
accused on the trial of any criminal case.

 

In any
case where the legal evidence raises an issue hereunder, the jury shall be
instructed that if it believes, or has a reasonable doubt, that the evidence
was obtained in violation of the provisions of this Article, then and in such
event, the jury shall disregard any such evidence so obtained.

 

 

Tex.
Code. Crim. Proc. Ann. art 38.23(a) (Vernon 2008).

            A
defendant’s right to the submission of jury instructions under Article 38.23(a)
is limited to disputed issues of fact that are material to his claim of a
constitutional or statutory violation that would render evidence
inadmissible.  Madden v. State,
No. PD-1243-05, 2007 WL 4404270, at *3 (Tex. Crim. App. Dec. 19, 2007) (citing Pierce
v. State, 32 S.W.3d 247, 251 (Tex. Crim. App. 2000)). 

 

The
terms of the statute are mandatory, and when an issue of fact is raised, a
defendant has a statutory right to have the jury charged accordingly. The only
question is whether under the facts of a particular case an issue has been
raised by the evidence so as to require a jury instruction. Where no issue is
raised by the evidence, the trial court acts properly in refusing a request to
charge the jury.

 

 

Madden, 2007 WL
4404270, at *3 (quoting Murphy v. State, 640 S.W.2d 297, 299
(Tex. Crim. App. 1982)).

            There
are three requirements that a defendant must meet before he is entitled to the
submission of a jury instruction under Article 38 .23(a):

            (1)        The evidence heard by the jury must
raise an issue of fact;

            (2)        The evidence on that fact must be
affirmatively contested; and

(3)        That
contested factual issue must be material to the lawfulness of the challenged
conduct in obtaining the evidence.

Madden, 2007 WL
4404270, at *3-4.  “If there is no
disputed factual issue, the legality of the conduct is determined by the trial
judge alone, as a question of law.”  Id.,
at *4.  If other facts, not in
dispute, are sufficient to support the lawfulness of the challenged conduct,
then the disputed fact issue is not submitted to the jury because it is not
material to the ultimate admissibility of the evidence.  Id. 
In short, the disputed fact must be an essential one in deciding
the lawfulness of the challenged conduct. 
Id.

            A review of the record shows that no material
factual dispute existed at the time of the trial court’s refusal to submit the
requested instruction to the jury. 
Appellant had been secretly recorded while making a telephone call to
his wife.  There was no evidence that
either Appellant or his wife had consented to the call being recorded.  However, the evidence also showed that
Appellant made the call with at least one jailer in the same room and that
Appellant continued to threaten Conner even after receiving a verbal warning
from that jailer regarding the use of threats and profane language.  These facts were not in dispute, and there
was no material conflict in the evidence. 
Therefore, the legality of the conduct was a question of law for the
trial court.  See id.  As such, the trial court properly denied Appellant’s
jury instruction request.  See id.,
at *9.  We overrule
Appellant’s sixth issue.

 

Evidentiary Sufficiency

            In his seventh and eighth
issues, Appellant claims that the evidence was legally and factually
insufficient to support a conviction.

Standard
of Review








            The Due Process Clause of the
Fourteenth Amendment requires that evidence be legally sufficient to sustain a
criminal conviction.  Jackson v.
Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d
560 (1979).  Evidence is legally
sufficient when an appellate court, viewing the evidence in the light most
favorable to the judgment, determines that a rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Johnson v. State,
871 S.W.2d 183, 186 (Tex. Crim. App. 1993) (citing Jackson, 443
U.S. at 319, 99 S. Ct. at 2789).  We must
bear in mind that the jury is the exclusive judge of the credibility of
witnesses and of the weight to be given their testimony.  Barnes v. State, 876 S.W.2d 316, 321
(Tex. Crim. App. 1994).  The jury is
entitled to draw reasonable inferences from the evidence.  Dudley v. State, 205 S.W.3d 82,
86-87 (Tex. App.–Tyler 2006, no pet.). 
Likewise, the reconciliation of conflicts in the evidence is within the
exclusive province of the jury.  Losada v. State, 721 S.W.2d 305, 309
(Tex. Crim. App. 1986).  A successful
legal sufficiency challenge will result in rendition of an acquittal by the
reviewing court.  See Tibbs
v. Florida, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d
652 (1982).

            In addition to the guarantees
provided by the Fourteenth Amendment, in the direct appeal of a criminal case,
the courts of appeals have the statutory and constitutional authority to
entertain a claim of factual insufficiency.  Watson v. State, 204 S.W.3d 404, 414
(Tex. Crim. App. 2006).  In conducting a
factual sufficiency review of the evidence, we must first assume that the
evidence is legally sufficient under the Jackson standard.  See Clewis v. State, 922
S.W.2d 126, 134 (Tex. Crim. App. 1996). 
We then consider all of the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compare it to the
evidence that tends to disprove that fact.  See Santellan v. State, 939 S.W.2d
155, 164 (Tex. Crim. App. 1997).  A
verdict will be set aside “only if the evidence supporting guilt is so
obviously weak, or the contrary evidence so overwhelmingly outweighs the
supporting evidence, as to render the conviction clearly wrong and manifestly
unjust.”  Ortiz v. State,
93 S.W.3d 79, 87 (Tex. Crim. App. 2002). 
A clearly wrong and manifestly unjust verdict occurs where the jury’s
finding “shocks the conscience” or “clearly demonstrates bias.”  Zuniga v. State, 144 S.W.3d 477, 481
(Tex. Crim. App. 2004).  The fact that we
might harbor a subjective level of reasonable doubt is not enough to overturn a
conviction that is founded on legally sufficient evidence.  See Watson








 , 204 S.W.3d at 417.  Although we are authorized to disagree with
the jury’s determination, even if probative evidence exists that supports the
verdict, see Clewis, 922 S.W.2d at 133, our evaluation
should not substantially intrude upon the jury’s role as the sole judge of the
weight and credibility of witness testimony.  Santellan, 939 S.W.2d at 164.  Where there is conflicting evidence, the jury’s
verdict on such matters is generally regarded as conclusive.  Dudley, 205 S.W.3d at 89.  We cannot declare that a conflict in the
evidence renders the evidence factually insufficient simply because we disagree
with the jury’s resolution of the conflict. 
See Watson, 204 S.W.3d at 417.  A successful factual sufficiency challenge
will result in a reversal of the conviction challenged and remand of the case
for a new trial.  See id. at
414.

Discussion

            As charged in the sole count of the
information, the State had to prove that, 

 

on or about the 13th day of March, 2005, and before
the making and filing of this information, in the County of Cherokee and the
State of Texas, KEVIN WADE CONNER did then and there, with intent to
harass, annoy, alarm, abuse, torment, or embarrass Penny Conner, threaten Penny
Conner by telephone, in a manner reasonably likely to alarm Penny Conner, to
inflict serious bodily injury on Penny Conner, a member of the defendant’s
family.

 

 

See Tex. Penal Code Ann. § 42.07(a)
(Vernon 2003).

            The evidence as to Appellant’s
conversation with Penny Conner was uncontroverted.  Therefore, the only arguably weak point in
the State’s evidence was Appellant’s intent. 
However, even here, the evidence in question was strong evidence of
intent.  

            Deputy Jenkins testified that,
during the telephone call, Appellant told Penny Conner

 

[y]ou know your shit is weak. . . . I’m coming after
your ass.  They can only keep me here so
long. . . . When I get out, we’re going to talk, maybe talk with my
goddam fists.

 

 

This testimony
was not controverted by any witness or piece of evidence.  Further, Appellant made no attempt to impeach
the credibility of Deputy Jenkins.  In
addition, Penny Conner testified, without objection, as to the substance of the
telephone conversation.  She testified
that Appellant told her “my ass needed to be out of town prior to him being
released from jail . . . and he told me that we would talk but it would be with
his fist.”  These facts were not
controverted.

            “It is axiomatic that facts and
circumstances attending a given act or omission may reveal intent.”  Stanfield v. State, 718 S.W.2d 734,
738 (Tex. Crim. App. 1986).  A fact
finder may infer intent from the conduct and circumstances surrounding the
case.  See Williams v. State,
688 S.W.2d 486, 488 (Tex. Crim. App. 1985). 
Here, the uncontroverted testimony regarding the substance of Appellant’s
telephone statements made to Penny Conner were strong evidence of his culpable
mental state.  Nothing in the record
supports that Appellant meant to relay any message other than what would be
understood from the plain meaning of the statements.








            The jury determined that Appellant
had the necessary intent to commit the crime of telephone harassment as set
forth in the information.  Based upon our
review of the record and our application of the appropriate standards of
review, we hold that the evidence was both legally and factually sufficient for
a jury to have found that Appellant committed the charged offense of telephone
harassment.  We overrule Appellant’s
seventh and eighth issues.

 

Assessment of Fine

            In
Appellant’s ninth issue, he complains that the trial court probated only a
portion of the fine assessed against Appellant. 
Appellant argues that the trial court was required by law to probate
Appellant’s entire fine because of the jury’s recommendation of community
supervision.  We disagree.

            Community
supervision, also known as probation,  is
not part of the sentence, but instead is an arrangement in lieu of the
sentence.  Spath v. State,
6 S.W.3d 530, 532 (Tex. Crim. App. 1999). 
A jury that imposes confinement as punishment for an offense may
recommend community supervision.  Tex. Code. Crim. Proc. Ann. art. 42.12 §
4(a) (Vernon Supp. 2007).  The trial
court must then suspend the imposition of the sentence and place the defendant
on community supervision. Id. 
However, the trial court has the discretion to determine the conditions
of community supervision.  Tex. Code. Crim. Proc. Ann. art. 42.12 §
11(a) (Vernon Supp. 2007).  Pursuant to
this authority, the trial court may impose “any reasonable condition that is
designed to protect or restore the community, protect or restore the victim, or
punish, rehabilitate, or reform the defendant.” 
Id.  The provisions
of community supervision may include a requirement that the defendant “pay his
fine, if one be assessed, and court costs whether a fine be assessed or not, in
one or several sums.” Tex. Code. Crim.
Proc. Ann. art. 42.12 § 11(a)(8) (Vernon Supp. 2007).








            The
trial court imposed, as a condition of community supervision, that Appellant
pay a $500 fine.  The jury had assessed
as punishment a fine of $1,000.  Although
the jury recommended community supervision, the trial court was within its
discretion to include, as a condition of that community supervision, that
Appellant pay all of the fine assessed by the jury.  Because the permissible conditions of
community supervision include a provision for payment of a fine if one was
assessed, the trial court’s condition that Appellant pay a $500 fine was not improper.  We overrule Appellant’s ninth issue.

 

Disposition

            We
affirm the trial court’s judgment.

 

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

 

 

 

Opinion delivered February 29, 2008.

Panel consisted of Worthen,
C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1] Appellant had previously suspected that Penny Conner was engaged in an
affair.  By the time of his alleged
discovery of proof regarding the affair, Appellant and Conner had been
separated for approximately three years. 
The two subsequently divorced.





[2] The jury requested to listen to the recording during their
deliberations and that request was granted by the trial court.  However, the fact that the jury sought to
hear this recording again does not, standing alone, show that Appellant was
harmed.





[3] The properly objected to question related to whether the conversation
was abusive.  The later question related
to whether the conversation was intended to torment.